UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| FREDDIE J. ISAACS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No. 1:12-cv-00588-MJD-RLY |
| MICHAEL J. ASTRUE Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Freddie Isaacs requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), & 1382c(a)(3). For the reasons set forth below, the decision of the Commissioner is **REVERSED**.[1]

### I. Procedural History

Isaacs filed an application for DIB and SSI on October 21, 2009, alleging an onset of disability of August 1, 2006. Isaacs' applications were denied initially on January 13, 2010 and on reconsideration on April 16, 2010. Isaacs requested a hearing, which was held on August 26, 2010 before Administrative Law Judge Ronald Jordan ("ALJ"). The ALJ held a subsequent hearing on October 14, 2010. The ALJ denied Isaacs' applications on January 14, 2011. The

---

[1] The parties consented to the Magistrate Judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Any objections to or appeal of this decision must be made directly to the Court of Appeals in the same manner as an appeal from any other judgment of a district court. 28 U.S.C. § 363(c)(3).

1

Appeals Council denied Isaacs' request for review on March 17, 2012, making the ALJ's decision the final decision for purposes of judicial review. Isaacs filed his Complaint with this Court on May 3, 2012.

## II.     Factual Background and Medical History[2]

Isaacs has a long history of alcohol abuse stemming back to when he was eight years old. He was diagnosed with bipolar disorder in 1996. In 2000, he sought treatment at Dunn Mental Health Center where he was diagnosed as having bipolar disorder and anxiety along with alcohol abuse. Isaacs then had a period of sobriety from March 2000 through 2001 and continued to seek treatment for bipolar disorder, depression, and anxiety. He was prescribed Lithium during this period and showed marked improvement in his treatments starting in April 2000. In December 2001, he was seen by Dr. Mark Jones. At this visit, Isaacs questioned whether he had bipolar disorder and told Dr. Jones that he stopped taking his medication. Dr. Jones also noted that Isaacs' mental status examination was normal.

By 2006, it was clear that Isaacs had returned to drinking. He had been arrested and taken to the emergency room on several occasions for drinking related incidents. He resumed treatments for alcoholism, bipolar disorder and anxiety at Dunn Mental Health Center in September 2009. He also had court-mandated treatments at Meridian Services. At Meridian, Isaacs began seeing case manager Joyce Harris and Dr. Carol Rizvi. During these treatments, Isaacs habitually reported having hallucinations of his dead parents. In November 2009, Dr. Rizvi diagnosed Isaacs with bipolar I disorder, alcohol dependence, and personality disorder.

In December 2009, the State Agency psychologist Dr. Amy Johnson completed a Psychiatric Review Technique. She reported that Isaacs met listing 12.09 Substance Addiction

---

[2] Because Isaacs only disputes the ALJ's findings regarding his mental impairments, the facts are limited to the discussion of the mental impairments and will not discuss the physical impairments.

Disorders. She diagnosed him as having bipolar disorder and alcohol dependence. While Dr. Johnson found Isaacs' statements to be credible, she also found that Isaacs's alcohol abuse was material.

Isaacs stopped drinking in February 2010 and has remained sober through the time of the hearings. He continued to seek treatment for his mental health conditions. Isaacs was examined by Dr. David Kuhaneck in February 2010. He claimed to hear music and voices, but denied hallucinations. Dr. Kuhaneck diagnosed Isaacs with bipolar I disorder, panic disorder with agoraphobia, and alcohol abuse. In March 2010, Ms. Harris completed a Report of Psychiatric Status countersigned by Dr. Kuhaneck opining that Isaacs would be "unable to do the routines required for a job" because of his "anxiety, poor concentration and memory, and racing thoughts." [R. at 446-452.]

Isaacs began treatment with Dr. Boris Imperial in March 2010. He told Dr. Imperial that he often saw and talked to his dead parents. Dr. Imperial diagnosed him with bipolar disorder, panic disorder with agoraphobia and alcohol abuse. Dr. Imperial treated Isaacs approximately once per month through at least June 2010. In May 2010, Dr. Imperial completed a Medical Source Statement. In his report, Dr. Imperial opined that Isaacs would have marked to extreme limitation following and carrying out work-related instructions due to his mental impairments. Dr. Imperial also noted that, although Isaacs has a history of alcohol dependence, he had been alcohol-free since February 2010. In this report, Dr. Imperial also notes that Isaacs' diagnosis was changed to paranoid schizophrenia at a recent psychiatrist appointment. In June 2010, Dr. Imperial continued to diagnose Isaacs with schizophrenia, panic disorder with agoraphobia, and alcohol abuse.

At the hearing medical expert Dr. Georgia Anne Pitcher testified with regard to Isaacs' mental impairments. She testified that it was highly unusual for a person to be diagnosed with onset schizophrenia at Isaacs' age. Dr. Pitcher opined that Isaacs does suffer from the symptoms alleged, but that she believed that a year of sobriety was needed to determine whether the symptoms would continue absent alcoholism. She ultimately concluded that at that point in time, alcohol abuse was material to Isaacs' symptoms.

### III.     Applicable Standard

To be eligible for SSI and DIB, a claimant must have a disability under 42 U.S.C. § 423.[3] Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments

---

[3] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

If the ALJ determines that the claimant is disabled and there is medical evidence of a drug addiction or alcoholism, the ALJ must determine whether the drug addiction or alcoholism is a contributing factor material to the determination of disability. 20 C.F.R. § 404.1535(a). Under the Social Security Act, "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). To determine whether the alcoholism is a material factor, the ALJ must determine whether the claimant will still be disabled if he stopped using alcohol. 20 C.F.R. § 404.1535(b)(1). To make this determination, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using alcohol and then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. § 404.1535(b)(2). If the ALJ determines that the claimant's remaining limitations are disabling, then he is disabled independent of the alcoholism and the ALJ must find that the alcoholism is not a contributing factor material to the determination of disability. 20 C.F.R. § 404.1535(b)(2)(ii). If the ALJ determines that the remaining limitations are not disabling, then the ALJ must find that the alcoholism is a contributing factor material to the determination of disability, and, therefore, the claimant is not disabled. 20 C.F.R. § 404.1535(b)(i).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

## IV.    The ALJ's Decision[4]

The ALJ first considered whether Isaacs would be disabled based on all of his impairments, including the substance use disorder. Applying the five-step analysis, the ALJ found at step one that Isaacs had not engaged in substantial gainful activity since the alleged onset date of August 1, 2006. At step two, the ALJ found that, since the alleged onset date, Isaacs had the following severe impairments: alcohol dependence, mental impairments variously diagnosed as bipolar, anxiety, depression, and degenerative changes of the spine. The ALJ did not include the diagnosis of schizophrenia as a severe impairment. The ALJ did not believe it was an accurate diagnosis because there was no such diagnosis in the medical evidence of

---

[4] Because Isaacs does not challenge the ALJ's findings regarding his physical impairments, the Court limits its discussion of the ALJ's decision to the mental impairments.

record, there were no prior allegations of audiovisual hallucinations or paranoia, and the medical expert testified that it was "highly unusual for someone to have onset of schizophrenia at the claimant's age." [R. at 15.]

At step three, the ALJ determined that, including the substance use disorder, Isaacs' impairments met sections 12.04, 12.06, and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d) and 416.920(d)). Accordingly, Isaacs would be found to be "disabled" under the Act.

The ALJ next considered whether Isaacs would be disabled if he stopped the substance use. The ALJ determined at step two that, if Isaacs stopped the substance use, Isaacs would continue to have a severe impairment or combination of impairments. However, at step three, the ALJ found that Isaacs would not have an impairment or combination of impairments that met or medically equaled any of the listed impairments.

The ALJ also determined that, if Isaacs stopped the substance use, he would have the following residual functional capacity ("RFC"): lift, carry, push, pull twenty pounds occasionally and ten pounds frequently; stand and walk six hours in an eight hour day and sit six hours; occasional balance, stop crouch, crawl, kneel and climb; simple, repetitive tasks requiring little in the way of independent judgment or analysis; work goals on a daily basis should be fairly static and he should work in only a mild to moderately stressful work environment; he should not be required to have contact with the general public to perform the functions of the jobs and he should have only occasional, superficial contact with co-workers.

At step four, the ALJ determined that, if Isaacs stopped the substance use, he would be unable to perform past relevant work. At step five, the ALJ determined that, if Isaacs stopped the substance use, considering his age, education, work experience, and RFC, there would be a

significant number of jobs in the national economy that Isaacs could perform. Finally, the ALJ found that, because Isaacs would not be disabled if he stopped the substance use, Isaacs' substance use disorder is a contributing factor material to the determination of disability. Therefore, Isaacs was not disabled within the meaning of the Act.

## V. DISCUSSION

The ALJ's decision is not supported by the medical evidence and, therefore, remand is required. The ALJ's primary reason for finding that Isaacs is not disabled is that Isaacs' mental conditions improved when he was not drinking and therefore they would likely improve again if Isaacs again stopped drinking. The ALJ based this finding on the last period of time when Isaacs was sober in 2001, which was almost ten years prior to the hearing. However, as documented by the medical evidence of record, Isaacs' conditions have not improved, nor are these conditions the same as they were ten years before. For example, Isaacs did not have hallucinations in 2001, nor did Isaacs have panic disorder with agoraphobia. Most importantly, the ALJ acknowledges that Isaacs would continue to have a severe impairment or combination of impairments but fails to specify which impairments remain. 20 C.F.R. § 404.1535(b)(2). The record also shows that, when Isaacs stopped drinking around March 2000, his improvements were almost immediate, as demonstrated by a treatment visit the following April. Isaacs continued to improve through December 2001. He was also prescribed Lithium and Celexa for his bipolar disorder and depression. The ALJ notes that Isaacs' condition improved when sober to the point where Isaacs questioned whether he even had bipolar disorder at a mental status examination and stop taking his prescribed medication. [R. at 19.] The ALJ argued that, since this mental status examination was "normal, . . . it is clear that sustained abstinence from alcohol results in almost total elimination of psychological symptoms." [R. at 20.]

8

The ALJ's finding is analogous to that of *Kangail v. Barnhart*, 454 F.3d 627 (7th Cir. 2006). In *Kangail*, the ALJ found that the medical witnesses had contradicted themselves when they said that plaintiff's mental illness was severe, yet stated that she was behaving normally at the office visits. *Kangail*, 454 F.3d at 629. The ALJ even attributed Kangail's bipolar disorder to the substance abuse. *Id*. The 7th Circuit held that there was no contradiction as bipolar disorder is episodic and, although there is a correlation between the two conditions, the disorder itself cannot be caused by substance abuse. *Id*. (citing American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 187, 354 (4th ed.1994); Frederick K. Goodwin & Kay Redfield Jamison, *Manic–Depressive Illness* 219–25 (1990); Willem A. Nolen *et al.*, "Correlates of 1–Year Prospective Outcome in Bipolar Disorder: Results from the Stanley Foundation Bipolar Network," 161 *Am. J. Psychiatry* 1452 (2004); Marcia L. Verduin et al., "Health Service Use Among Persons With Comorbid Bipolar and Substance Use Disorders," 56 *Psychiatric Services* 475–76 (2005)). In fact, the 7th Circuit found the opposite to be true: that bipolar disorder can actually precipitate substance abuse. *Id*. (citations omitted).

There is no doubt from the record that Isaacs' substance abuse may have aggravated his mental illness. However, "the fact that the substance abuse aggravated [the] mental illness does not prove that the mental illness itself is not disabling." *Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006) (citing *Brown v. Apfel,* 192 F.3d 492, 499 (5th Cir.1999); *Sousa v. Callahan,* 143 F.3d 1240, 1245 (9th Cir.1998)). Even though Isaacs stopped taking the medication to control his mental illness, it is quite possible – although not established in the record – that discontinuing the medication may have led to a relapse. What is established in the record is that Isaacs has a long history of bipolar disorder and his symptoms have not improved since he stopped drinking in March 2010. However, the ALJ failed to take any of this into consideration. Therefore, remand is

9

required to determine which of Isaacs' mental impairments would remain in the absence of substance use and the severity of such impairments.

The ALJ also rejected testimony and medical evidence from Isaacs' treating sources. While recognizing that Dr. Imperial is a "treating source" [R. at 15], the ALJ completely rejects the opinion of Dr. Imperial. First, the Court notes that all treatments and diagnoses by Dr. Imperial were made while Isaacs was sober. A treating source's opinion is normally given controlling weight if it is adequately supported by objective medical evidence and consistent with other substantial evidence in the record. *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009); *Harlin v. Astrue*, 424 F.App'x 564, 567 (7th Cir. 2011). If the ALJ fails to give controlling weight, the ALJ must offer "good reasons" by evaluating the opinion considering the factors set forth in the regulations. *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010); *Moss*, 555 F.3d at 561; 20 C.F.R. § 404.1527 (c). The ALJ's only reason for discrediting Dr. Imperial's opinion is that the ALJ did not believe that Dr. Imperial's diagnosis of schizophrenia was a true diagnosis because Dr. Imperial was "relying on an inaccurate medical history." [R. at 15.] The ALJ based this opinion on Dr. Imperial's statement that schizophrenia was previously diagnosed, although there was no such diagnosis in the medical record and there were no prior allegations of audiovisual hallucinations or paranoia. The ALJ also referred to Dr. Pitcher, who testified that it is highly unusual for someone to have onset of schizophrenia at Isaacs' age. However, the fact that it is "unusual" for a person to have onset of schizophrenia at that age, does not mean that it is not possible. Moreover, although there does not appear to be a previous diagnosis of schizophrenia in the record (it would have helped Isaacs to provide such medical record if it existed), there were documented allegations of audiovisual hallucinations and paranoia throughout the record to support Dr. Imperial's diagnosis. [R. at 315, 317, 320, 474, 502, 539,

10

575.] Further, Dr. Imperial did not diagnose Isaacs on the very first visit after halfheartedly looking at the medical record. It wasn't until several months and visits later that Dr. Imperial changed his diagnosis, having had time to review the record and Isaacs. Even if this Court were to accept the ALJ's opinion regarding the diagnosis of schizophrenia, and strike the diagnosis, the remainder of Dr. Imperial's opinion is very much consistent with the record, especially Isaacs' other treating sources, Joyce Harris, Dr. Kuhaneck, and Dr. Rizvi. The ALJ does not provide any other reason for discrediting Dr. Imperial's entire opinion with regard to Isaacs' symptoms and therefore, remand is required to determine the proper weight to attribute Dr. Imperial's opinion.

      The ALJ stated that he considered the Report of Psychiatric Status by Joyce Harris, countersigned by Dr. Kuhaneck, which was completed March 4, 2010. In this report, Ms. Harris and Dr. Kuhaneck concluded that Isaacs was unable to work due to anxiety, poor concentration and memory, and racing thoughts. [R. 446-451.] The ALJ discredited this opinion because it was made "less than a month after the claimant reportedly quit drinking" and that with sustained abstinence, Isaacs' ability to function improves. [R. at 21.] As discussed above, the record reflects that Isaacs' condition had not improved since he quit drinking in 2010. Further, Joyce Harris gave almost an identical assessment at the second hearing, seven months after providing the report. Ms. Harris testified that Isaacs had intense anxiety and agoraphobia, low concentration, difficulty focusing on projects, and difficulty being around people. She further testified that she did not believe that Isaacs was capable of working. While the ALJ took this testimony into consideration, *id*., he found that it was unsupported by the evidence of record. As noted, this testimony is consistent with the Report of Psychiatric Status countersigned by Dr. Kuhaneck, and the opinion of Dr. Imperial.

The ALJ also considered the opinions of the non-examining State Agency physicians. Dr. Johnson completed Psychiatric Review Technique in December 2009, prior to when Isaacs became sober which was affirmed later by a reviewing physician. The ALJ recognized that she did not have the benefit of the most recent medical source statements, current medical records, or the hearing testimony. [R. at 21.] Nevertheless, the ALJ stated that "their reports essentially support the conclusions stated herein. To the degree that [their conclusions] differ [sic], their reports are accorded little weight, as the opinions were based on only part of the current evidence of record." *Id*. Here, the ALJ appears to selectively consider the evidence only when it is in line with his own opinion and discredits all other evidence. This is impermissible. *Clifford v. Apfel*, 227 F.3d 863, 817 (7th Cir. 2000) (The ALJ may not "select and discuss only that evidence that favors his ultimate conclusion.") (citation omitted). The ALJ appears to do the same with Medical Expert Dr. Pitcher's testimony. While ultimately concluding that alcohol abuse was material to the finding of disability, Dr. Pitcher also testified that at eight months, it was too early to tell whether Isaacs' conditions will improve with remission. Dr. Pitcher testified that it takes one year of abstinence to determine a person's ability to function without alcohol.[5] The ALJ rejected Dr. Pitcher's conclusion that it was too early to tell in favor of the testimony that aligned with the ALJ's conclusions. More importantly, however, it was impermissible for the ALJ to accept the opinion of the medical expert over that of his treating sources without considering the factors outlined in the regulations. *Moss*, 555 F.3d at 561.

---

[5] Isaacs is correct in that there is no legal support for a one year period of sobriety to determine whether Isaacs' mental impairments will remain. However, the majority of the medical evidence is during a period where Isaacs was abusing alcohol with only a few short months where Isaacs was sober since February 2010. On remand, the Court encourages Isaacs and the Commissioner to obtain updated medical evidence to determine the severity of Isaacs' mental impairments when not abusing alcohol.

Because the ALJ did not properly determine which mental impairments remain since Isaacs stopped drinking and rejected evidence from Isaacs' treating sources without first considering the factors set forth in the regulations, remand is appropriate.

## VI.  CONCLUSION

For the aforementioned reasons, substantial evidence does not support the ALJ's determination that Isaacs is not disabled and the Commissioner's decision is **REVERSED** and **REMANDED**.

Date:  04/22/2013

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov